UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

      v.                                                    No. **CR 07-748 MCA**

**TRAVIS DALLY**,

        Defendant.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant *Travis Dally's Motion to Exclude Lay Witness Testimony of FBI Agent Theodore Griego that a Grainy Photograph from Target in 2002 "Looks Like" Travis Dally* [Doc. 572] filed on March 18, 2009. The Court held a hearing on Defendant Dally's motion on April 8, 2009. Having reviewed the parties' submissions, the arguments and evidence presented at the hearing, the relevant law, and being fully advised in the premises, the Court grants Defendant Dally's motion for the reasons set forth below.

**I.**      **BACKGROUND**

The *Superseding Indictment* [Doc. 36] in this case charges Defendant Dally and two other individuals with conspiring to kidnap and murder Henry George in June 2002. As one of the overt acts in this conspiracy, the Government alleges that Defendant Dally and Defendant Benjamin Raymond purchased a shovel from a Target store on or about June 20, 2002. This shovel allegedly was used to bury Mr. George's body in the desert after he was

murdered. It was later recovered in the back of Defendant Raymond's car and found to contain evidence that Mr. George's blood was deposited on it. In addition, a receipt for the shovel was found in Defendant Raymond's apartment. By researching the information on the receipt, the Government was able to obtain a videotape taken at the Target store around the time that the shovel was purchased.

At the motion hearing in this case, the Government presented a series of enlarged, enhanced images taken from the Target videotape in a "forensic video analysis" prepared by one or more Target employees. [Ex. 1, 2.] In addition to the images themselves, this analysis contains some text that explains how the images were enhanced and identifies some points of comparison between images taken at the entrance to the store and images taken inside the store. The text of the Target "forensic video analysis" also describes the suspect in the image as having "a medium build with dark hair that is similar to a bowl-style cut," and wearing a "dark longsleeved shirt." [Ex. 1, 2.]

While the images from the Target videotape show a male figure's outline and give some clues as to the type of clothing he is wearing, their resolution is too low to depict any ascertainable facial features or other information (such as tattoos or jewelry) with sufficient detail to make his identity obvious to an ordinary person who was familiar with his appearance at the time. In addition, the colors depicted in the enlarged images from the Target videotape introduced as Exhibits 1 and 2 differ to some degree from those depicted in the smaller version of the same images presented to the Court as Exhibits 1A and 2A, apparently due to a change in processing the digital images that occurred when they were enlarged or printed.

2

Despite these shortcomings in the images, Federal Bureau of Investigation (FBI) Special Agent Theodore Griego testified at the hearing that, in his opinion, the images depict Defendant Travis Dally.  As a basis for this opinion, Agent Griego stated that in 2005 he had occasion to view a "wanted flyer" from the New Mexico Department of Corrections that depicted Defendant Dally and described his "physical dimensions."  Agent Griego also had the opportunity to view Defendant Dally's appearance (1) during a face-to-face interview while Defendant Dally was in custody in November 2005, (2) during a meeting with his probation or parole officer in 2006, and (3) from a distance during a series of undercover surveillance operations in 2006 and 2007.  [Tr. 4-8-09.]

Further, Agent Griego testified that although neither he nor his agency conducted the forensic analysis apparent in Exhibits 1 and 2, and he was not familiar with the process or methodology utilized by the Target Store employees, he nonetheless accepted the Target forensic video analysis and considered the comparisons made therein as reflected in the text noted on Exhibits 1 and 2.  The Court specifically asked Agent Griego whether, in formulating his opinions, he took into consideration the comments made by the Target Store employees and noted as text on Exhibits 1 and 2.  He responded that he had.

Agent Griego did not, however, agree with all of these comments.  In this regard, he testified that, in his opinion, the portion of the images described in the Target "forensic video analysis" as depicting "dark hair with a bowl-style cut" instead depicts a blue bandanna being worn around the suspect's head.  According to Agent Griego, the "longsleeved shirt" described in the analysis is a blue "Big Ben" jacket of the type issued to inmates by the New Mexico Department of Corrections.  Agent Griego surmised that Defendant Dally might have

3

been wearing such attire when the Target videotape was taken in June 2002, because Defendant Dally was seen wearing a blue bandanna in a surveillance photograph taken in mid-2006 [Ex. 3], and because inmates sometimes take "Big Ben" jackets with them when they are released from prison. But Agent Griego did not entirely rule out the possibility that another potential suspect or other person, such as Defendant Benjamin Raymond, could have been wearing such attire in June 2002. [Tr. 4-8-09.]

Finally, Agent Griego acknowledged that Defendant Dally's weight and hair style have fluctuated over time, but he maintained that he could still distinguish Defendant Dally from other potential suspects by his height. In this regard, Agent Griego noted that to aid in determining the suspect's height, another agent had recently gone to the Target store and measured the height of various reference points, such as the store's exterior doors, security devices, and shopping carts. [Tr. 4-8-09.]

## II.　ANALYSIS

In his motion, Defendant Dally seeks to preclude Agent Griego from testifying during the Government's case-in-chief at trial that any of the images captured on the Target videotape depict or "look like" him. Defendant Dally contends that such evidence would not be helpful to the jury under Fed. R. Evid. 701 because Agent Griego has no first-hand knowledge of what he looked like in June 2002, and because the images in question lack sufficient detail to support a lay opinion as to who they depict. Defendant Dally also contends that it would be unfairly prejudicial under Fed. R. Evid. 403 to admit such identification testimony in this case because of the danger that the jury will give undue weight to Agent Griego's opinion based on his status as the case agent and FBI agent, and

4

the fact that he is being offered as an expert witness on other topics.

Rule 701 permits a lay witness to offer opinion testimony only when it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; see United States v. Contreras, 536 F.3d 1167, 1170 (10th Cir. 2008). In order to have a rational basis in perception, the witness must "'have first-hand knowledge of the events he is testifying about so as to present only the most accurate information to the finder of fact.'" United States v. Bush, 405 F.3d 909, 916 (10th Cir. 2005) (quoting United States v. Hoffner, 777 F.2d 1423, 1425 (10th Cir. 1985)). In order to qualify as a lay opinion, such first-hand knowledge must be of the type that "'could be reached by any ordinary person'" who perceived the event in question, without requiring the type of "specialized knowledge" that would bring the witness' opinions and inferences within the purview of an expert under Fed. R. Evid. 702. LifeWise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004) (quoting Doddy v. Oxy USA, Inc., 101 F.3d 448, 460 (5th Cir. 1996)).

While Rule 701 does not require a specific quantity or quality of first-hand knowledge or perception, it does "'require a lay witness to have sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful.'" Bush, 405 F.3d at 916 (quoting United States v. Henderson, 68 F.3d 323, 326 (9th Cir. 1995)). The "witness's prior familiarity with the defendant's appearance is the most critical factor" in determining if "'there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than the jury.'" Contreras, 536 F.3d at 1170 (quoting United

States v. Allen, 787 F.2d 933, 936 (4th Cir. 1986)).

The level of prior familiarity required to render the witness's opinion helpful to the jury is met when the witness "had repeated interactions with [the defendant], and thus could identify him based on many factors that would not be apparent to a jury viewing the defendant only in a courtroom setting." Id. The witness's prior familiarity also is enhanced when he or she "'had interacted with defendants in a way the jury could not, and in natural settings that gave them a greater appreciation of defendants' normal appearance.'" Id. at 1171 (quoting Allen, 787 F.2d at 936).

On the other hand, a lay opinion identifying the defendant is not helpful to the jury when the witness has never seen the defendant in person before the trial and is simply comparing a photograph to the defendant's appearance at trial. In that circumstance, "the jury is in as good a position to make the identification as the lay witness," because the lay witness' "identification of the defendant was no different from what the jury members themselves were required to do in comparing the surveillance photographs to the defendant in the courtroom." Bush, 405 F.3d at 917-18 (citing United States v. LaPierre, 998 F.2d 1460, 1465 (9th Cir.1993)).

Applying the above authorities to the facts of this case, the Court determines that Agent Griego's proposed lay opinion testimony identifying Defendant Dally as a person depicted in the Target videotape does not meet the requirements for admission under Fed. R. Evid. 701 and is distinguishable from the lay opinion testimony in Contreras for the following reasons. First, unlike the probation officer at issue in Contreras, Agent Griego has no firsthand knowledge of what Defendant Dally looked like or the type of clothing he wore

6

around the time that the surveillance videotape was recorded, because Agent Griego did not begin his investigation into the racketeering activities of the Aryan Brotherhood until more than a year later and did not even see a photograph of Defendant Dally until 2005..

The timing of the witness's prior interactions with the Defendant is important because, as noted in the district court's ruling in Contreras, the "relevant issues for the jury to determine . . . include not just the way Defendant appears at trial but also the way he appeared around the time of the" crime charged in the indictment. See United States v. Contreras, No. 05cr1150 MCA, Doc. 72, at 18 (D.N.M. unpublished memorandum opinion and order filed Aug. 3, 2006). The witness's lay opinion was especially helpful and probative in Contreras because she had interacted with Mr. Contreras on several occasions that were in approximately the same time frame as the crime charged in the indictment, which was recorded by a surveillance camera. See id. at 18-19.

According to the evidence presented at the suppression hearing in the present case, Defendant Dally's appearance may have changed over time as his weight, hair style, and clothing fluctuated between 2002 and the present. Thus, the relevant comparison for the jury to make is between the images captured on the Target videotape and the way Defendant Dally appeared at the time that videotape was recorded in June 2002, not at some later time when Agent Griego first observed him face-to-face in the artificial setting of a courtroom or correctional facility. In making that comparison, the jury is entitled to take into account whether and to what extent there are any differences between Defendant's appearance at the time of trial and his appearance at the time the Target videotape was recorded. See Contreras, 536 F.3d at 1171 (noting that "a change of appearance is one factor we take into

7

account to determine if opinion testimony would be helpful to a jury"); United States v. Ingram, 600 F.2d 260, 261 (10th Cir. 1979) (similar).  Agent Griego is not in a position to help the jury in taking account of such differences in appearance over time because he has no independent, first-hand knowledge of what Defendant Dally looked like in June 2002.

To the extent that Agent Griego forms a lay opinion by comparing the images in the Target videotape with other photographs taken of Defendant Dally during the relevant time period, he would be doing nothing more than what the jury members could do themselves by comparing the same set of images.  Such lay opinion testimony based on a mere comparison of recorded images falls short of the standard of helpfulness required under Fed. R. Evid. 701 and runs the risk of invading the province of the jury.  See LaPierre, 998 F.2d at 1465.

To the extent that Agent Griego's proffered testimony on this topic consists of more than just a comparison of images from the same time period, it would run afoul of the third requirement for lay opinion testimony under Rule 701 because it would necessarily require some form of scientific, technical, or other specialized knowledge that places the agent's testimony squarely within the purview of Rule 702.  In this regard, the Court notes that Agent Griego's assessment of the suspect's height was aided by having another agent take measurements of several reference points in the store, and Agent Griego's assessment of the suspect's clothing was aided by his specialized knowledge of the attire worn by prison inmates.  The agent used such specialized knowledge to make inferences about what Defendant Dally might have been wearing in June 2002, rather than testifying based on his personal, firsthand knowledge of what Defendant Dally actually wore during that time.

Moreover, the images from the Target videotape proffered by the Government already have been subjected to a form of forensic analysis that cloaks them in the guise of expert opinion, and Agent Griego testified that he accepted this analysis in formulating his opinions. Notwithstanding this analysis, the proffered images lack the level of detail necessary to show the type of visually obvious identifying information that would provide a rational basis for a lay opinion. Such lack of detail is evident in the fact that what Agent Griego described as a blue bandanna is identified in the Target forensic video analysis as "dark hair with a bowl-style cut." [Ex. 1, 2.]

Under these circumstances, the Court further concludes that Agent Griego's proposed testimony identifying the suspect depicted in the images from the Target videotape presents a danger of unfair prejudice or confusion of the issues that substantially outweighs the minimal probative value of such testimony under Fed. R. Evid. 403. Because he lacks firsthand knowledge of Defendant Dally's appearance in June 2002 and the images in question lack the level of detail necessary to point out identifying features that would be obvious to a lay witness, the jury would have to infer that Agent Griego possesses some special qualifications or credentials that enable him to reliably identify the images as Defendant Dally. The Government, however, has not proffered Agent Griego as an expert on this topic or otherwise identified a reliable methodology on which his proposed testimony identifying the suspect is based.

### III.   CONCLUSION

For the reasons set forth above, the Court determines that Agent Griego's proposed lay opinion as to whether Defendant Dally is depicted in the Target videotape is inadmissible

9

and must be excluded from the Government's case-in-chief at trial. In so ruling, the Court does not decide the admissibility of the Target videotape itself, the Target employee's forensic analysis of images derived from it, or any testimony to the effect that the individual depicted in such images (whomever it may be) is the same person who purchased the shovel corresponding to the receipt found in Defendant Raymond's apartment. The Government will be afforded the opportunity to authenticate the videotape (and still photographs) and to demonstrate their relevance apart from Agent Griego's proposed lay opinion concerning who they depict. This will be done outside the presence of the jury. In addition, the Court's pretrial rulings on evidentiary matters are subject to reconsideration in the event that an unforeseen change in circumstances arises at trial. For example, if Defendant Dally elicits testimony that the images from the Target videotape do not look like him, then the Court would have to revisit the issue of whether that line of questioning opens the door for rebuttal by the Government.

**IT IS THEREFORE ORDERED** that Defendant *Travis Dally's Motion to Exclude Lay Witness Testimony of FBI Agent Theodore Griego that a Grainy Photograph from Target in 2002 "Looks Like" Travis Dally* [Doc. 572] is **GRANTED** under the conditions specified above.

**SO ORDERED** this 14th day of April, 2009, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE