# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

        Plaintiff,

    v.                              No. CR 07-748 MCA

**TRAVIS DALLY**,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Defendant Dally's *Objection* [Doc. 565] to the Government's *Notice of Other Crimes or Bad Acts Pursuant to Rule 404(b)* [Doc. 550] filed on February 27, 2009, and Defendant *Travis Dally's Proposed Stipulation that the Aryan Brotherhood is a RICO Enterprise, and that Travis Dally Was a Member of the Aryan Brotherhood RICO Enterprise* [Doc. 594] filed on March 31, 2009. The Court held a hearing on the above matters on April 8, 2009. Having considered the parties' submissions, the evidence and argument presented at the hearing, the relevant law, and being fully advised in the premises, the Court sustains Defendant Dally's objections to the Government's evidence of other crimes or bad acts involving the prison incident on March 23, 2004, and the statement implicating him in a conspiracy to murder Mr. Anders in early 2005, on condition that Defendant Dally does not contest the  enterprise and membership elements of the charged crimes, as set forth in his proposed stipulations, and on condition that the jury be instructed that it must accept those elements as proven beyond a reasonable doubt.

## I.      **BACKGROUND**

Pursuant to a prior discovery order [Doc. 453], the Government disclosed five items of "Rule 404(b) evidence" pertaining to Defendants Dally, Wasson, and Looney on February 27, 2009.  [Doc. 550.]  Two of these items directly implicate Defendant Dally:  (1) an incident in early 2005 when Defendant Dally allegedly offered another inmate a "fast track" entry into the Aryan Brotherhood (AB) in exchange for the murder of Billy Anders, and (2) a prison incident on March 23, 2004, when a "squeegee" was found under Defendant Dally's bunk after he grabbed a corrections officer and ordered him to open Defendant Looney's cell in preparation for a possible attack on another inmate named Shawn Ural, who is allegedly a rival gang member.

Defendant Dally challenges the admissibility of the two incidents listed above in his *Objection to Notice of Other Crimes or Bad Acts Pursuant to Rule 404(b) and Motion for Discovery* [Doc. 565] on March 13, 2009.  Defendant Dally's *Objection* also raises two procedural issues related to the Government's Rule 404(b) evidence.  First, if the Court is going to admit evidence of the two incidents in question, then Defendant Dally states that he will request additional discovery regarding these incidents.[1]  Second, Defendant Dally contends that the need for Rule 404(b) evidence can be averted through the use of stipulations.

At a previous hearing on March 20, 2009, the Court asked Defendant Dally for

---

[1]This discovery request is moot insofar as the Court sustains Defendant Dally's objections.

clarification regarding the elements of the charged crimes to which he is willing to stipulate. In response to this query, Defendant Dally filed his *Proposed Stipulations* [Doc. 594] on March 31, 2009, in which he offers to "stipulate that (1) the Aryan Brotherhood is a criminal enterprise, and (2) that Mr. Dally was a prospective member or member of the RICO enterprise during the time frame alleged in the indictment." He further states that he is "willing to stipulate wherever the elements are required to prove a charge." Even if the Government refuses to accept his proposed stipulations, Defendant Dally represents that he will not contest those elements at any point during trial and "will advise the jury during his opening and closing statements that those elements are not in dispute, and that the jury should so find they have been proven beyond a reasonable doubt." [Doc. 594.]

## II.   ANALYSIS

### A.   Defendant Dally's Proposed Stipulations

The Court first turns to Defendant Dally's argument that his proposed stipulations preclude or obviate the need for the Rule 404(b) evidence to which he objects. The preclusive effect of stipulations was addressed by our Supreme Court in Old Chief v. United States, 519 U.S. 172 (1997).

Before Old Chief was decided, some courts applied a rule that precluded the Government from offering evidence regarding an element of the charged offense (including Rule 404(b) evidence) when the defendant makes a clear and unequivocal offer to stipulate to the element in question which includes an explicit jury instruction that the Government no longer needs to prove that element. See, e.g., United States v. Crowder, 87 F.3d 1405,

1410-11 (D.C. Cir. 1996) (en banc) (summarizing the positions taken by the circuit courts prior to Old Chief).  The D.C. Circuit's opinion adopting this rule, however, was vacated and remanded for further consideration in light of Old Chief.  See United States v. Crowder, 519 U.S. 1087 (1997).  On remand, the D.C. Circuit concluded that Old Chief limited the preclusive effect of stipulations to the narrow context of "'the element of felony-convict status'" where "there was 'no cognizable difference between' a judgment and conviction order proving felony convict status and an admission or stipulation to that effect."  United States v. Crowder, 141 F.3d 1202, 1205 (D.C. Cir. 1998) (en banc) (quoting Old Chief, 519 U.S. at 191).

Outside of the very limited context of felony-convict status, a defendant's offer to stipulate to an element of a crime does not necessarily preclude the Government from introducing relevant evidence to prove that element, "even if the defendant's proposed stipulation is unequivocal, and even if the defendant agrees to a jury instruction" that relieves the Government of the burden of proving the element in question.  See id. at 1209.  Citing Old Chief and the D.C. Circuit's opinion on remand in Crowder, the Tenth Circuit now follows this approach.  See United States v. Tan, 254 F.3d 1204, 1213 (10th Cir. 2001).

Thus, for example, the Tenth Circuit has affirmed a district court's decision to allow the Government to show images of child pornography to a jury notwithstanding a defendant's offer to stipulate that the images constituted child pornography.  See United States v. Campos, 221 F.3d 1143, 1148-49 (10th Cir. 2002).  And the Tenth Circuit has reversed a district court decision to exclude evidence of a defendant's prior drunk driving

convictions under Rule 403 when offered to prove the malice element of a second-degree murder charge arising from a drunk-driving collision, notwithstanding a defendant's offer to stipulate that he knows it is dangerous to drive while drunk. See Tan, 254 F.3d at 1212-13.

It follows from the above authorities that Defendant Dally's proposed stipulations do not necessarily preclude the Government from presenting Rule 404(b) evidence as a matter of law. This conclusion does not end the Court's inquiry, however, because "trial courts may take offers to stipulate into account in making their Rule 403 determinations" with respect to balancing the probative value of the proffered evidence against the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. See Crowder, 141 F.3d at 1210 (citing the advisory committee notes to Fed. R. Evid. 403, which indicate that the availability of other means of proof, such as stipulations, may be an appropriate factor to weigh in applying this balancing test).

The weight given to stipulations in the Rule 403 balancing test depends, in part, on whether the precise language of the proposed stipulation is unequivocal and includes "a jury instruction requiring the jury to find the conceded element" of the charged crime. Id. Courts have held that an offer to stipulate carries very little weight in the Rule 403 balancing test when it is "ambiguous, conditional" or "tentative," id., or when a defendant "is not stipulating to an element of the charged crime" and instead only offers to stipulate to knowledge of a self-evident fact, Tan, 254 F.3d at 1213.

In this case, it appears that Defendant Dally has attempted to phrase his proposed stipulations as unequivocally and unconditionally as possible by stating that he will not contest that he is an AB member or that the AB meets the statutory definition of a RICO enterprise "wherever the[se] elements are required to prove a charge."   [Doc. 594.] Nevertheless, the Court finds that further clarification from the parties is required because neither side has submitted a proposed jury instruction that incorporates Defendant Dally's position into the statement of the essential elements of the Violent Crimes in Aid of Racketeering (VCAR) statute as charged in the *Superseding Indictment.*  [Doc. 36.]

To aid the parties in clarifying this matter, the Court will propose a jury instruction on this topic as follows:

> Counts 1, 2, 4, 5, 7, and 8 of the *Superseding Indictment* charge Defendant Travis Dally with committing violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959.

> To convict the Defendant of a violent crime in aid of racketeering under this statute, as charged in Counts 1, 2, 3, 5, 7, and 8, you must find that the Government has established each of the following elements beyond a reasonable doubt:

> 1.      That the Defendant had or sought a position in the Aryan Brotherhood;

> 2.      That the Aryan Brotherhood was an enterprise as defined in 18 U.S.C. § 1959(b)(2);

> 3.      That the enterprise engaged in, or its activities affected, interstate or foreign commerce;

> 4.      That the enterprise engaged in "racketeering activity" as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1);

> 5.      That the Defendant committed the underlying crime of violence

charged in that count; and

6.     That the Defendant's general purpose in committing the underlying crime of violence charged in that count was to gain entrance to, or to maintain or increase his position in, the Aryan Brotherhood.

As for the first and second elements of the violent crimes in aid of racketeering charged in Counts 1, 2, 3, 5, 7, and 8 of the *Superseding Indictment*, the parties have agreed that Defendant Dally had or sought a position in the Aryan Brotherhood during the relevant time period, and that the Aryan Brotherhood was an enterprise as defined in 18 U.S.C. § 1959(b)(2) during the relevant time period.  You must accept these facts as proven beyond a reasonable doubt.

This proposed instruction recites the elements of a VCAR offense as articulated in United States v. Smith, 413 F.3d 1253, 1277 (10th Cir. 2005); United States v. Fernandez, 388 F.3d 1199, 1219-20 (9th Cir. 2004); and United States v. Crenshaw, 359 F.3d 977, 991 (8th Cir. 2004).  The last paragraph of the instruction incorporates Defendant's proposed stipulations in the same manner as past cases involving prior felony convictions, see, e.g., United States v. Barros, No. 05cr2048 MCA, Doc. 105, Instr. 7 (D.N.M. jury instructions filed Aug. 15, 2007), or the jurisdictional elements of crimes committed in "Indian Country," see, e.g., United States v. Springer, No. 06cr1622 MCA, Doc. 57, Instr. 6 (D.N.M. jury instructions filed Feb. 15, 2007).

The Court directs the parties to file a notice setting forth their respective positions regarding the Court's proposed jury instruction, or setting forth their own proposed instruction incorporating Defendant Dally's proposed stipulations [Doc. 594] with citation to authority, by no later than May 12, 2009.  In addition, the parties are advised that the Court's rulings on Defendant Dally's objections to the admissibility of the Government's

Rule 404(b) evidence, as set forth below, are conditioned on the jury receiving an instruction that unequivocally requires the enterprise and membership elements of all VCAR offenses charged in the *Superseding Indictment* [Doc. 36] to be accepted as proven beyond a reasonable doubt.  In the absence of such a jury instruction, the rulings set forth below are subject to reconsideration.

### B.      Defendant Dally's Objections to the Government's Rule 404(b) Evidence

Under Fed. R. Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Id.  Such evidence may be admitted, however, to establish motive, intent, knowledge, preparation, plan, identity, and absence of mistake or accident.  See id.; United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000); United States v. Johnson, 42 F.3d 1312, 1315 (10th Cir. 1994).

To determine whether evidence is admissible for one of the purposes stated above, the Court applies the four-part test articulated by the Supreme Court in Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  This test requires that:

> (1) the evidence must be offered for a proper purpose;  (2) the evidence must
> be relevant;  (3) the trial court must make a Rule 403 determination of whether
> the probative value of the similar acts is substantially outweighed by its
> potential for unfair prejudice;  and (4) pursuant to Fed. R. Evid. 105, the trial
> court shall, upon request, instruct the jury that evidence of similar acts is to be
> considered only for the proper purpose for which it was admitted.

Zamora, 222 F.3d at 762 (quoting United States v. Roberts, 185 F.3d 1125, 1141 (10th Cir.1999)).

Although it is often associated with evidence of "prior acts," Rule 404(b) is not restricted to events which took place before the charged crime.  See United States v. Anifowoshe, 307 F.3d 643, 646-47 (7th Cir. 2002) (admitting evidence of acts subsequent to the charged crime in order to prove *modus operandi*).  Thus, it is more accurate to describe Rule 404(b) as a rule that applies only to evidence of "*other* acts," *i.e.*, evidence that is extrinsic to the offenses charged in the indictment.

The Tenth Circuit has held that Rule 404(b) "does not apply to testimony offered as direct evidence of charged crimes."  United States v. Portillo-Quezada, 469 F.3d 1345, 1353 (10th Cir. 2006).  For example, when a defendant is charged with a conspiracy crime, "uncharged acts 'committed in furtherance of the charged conspiracy are themselves part of the act charged.'  Such evidence is 'therefore intrinsic [to the crime] and simply does not implicate the requirements of 404(b).'"  Id. (quoting United States v. Green, 175 F.3d 822, 831 (10th Cir.1999)).  As discussed in further detail below, this reasoning also extends to racketeering offenses, because the uncharged acts are relevant to prove the ongoing existence of a racketeering enterprise, which is a discrete element of the offense.

In this case, the charges against Defendant Dally include conspiracy to kidnap and murder Henry George (Counts 1 and 4), and conspiracy to murder John Mudersbach (Count 7).  [Doc. 36.]  Such conspiracies in turn form elements of the offenses charged under the Violent Crimes in Aid of Racketeering (VCAR) statute.  18 U.S.C. § 1959(a).  "[E]very alleged § 1959 offense is in essence composed of two parts: (i) the violent crime in aid of racketeering and (ii) the predicate racketeering activity."  United States v. Cuong Gia Le, 310

F. Supp. 2d 763, 777 n.17 (E.D. Va. 2004).  Thus, in addition to proving (1) the underlying violent crime (*e.g.*, conspiracy to murder), the Government also must prove the following elements of a VCAR offense:  (2) the AB was a criminal organization that meets the statutory definition of an "enterprise," (3) the enterprise was engaged in or its activities affected interstate or foreign commerce, (4) the AB was engaged in racketeering activity during the time period in question, (5) the Defendant had or sought a position in the AB, and (6) the Defendant's general purpose in committing the violent crime at issue was to gain entrance to, or to maintain or increase his position in, the AB.  See Smith, 413 F.3d at 1277; Fernandez, 388 F.3d at 1219-20; Crenshaw, 359 F.3d at 991.

In VCAR cases where "the existence of a racketeering enterprise is at issue, evidence of uncharged crimes committed by members of that enterprise, including evidence of uncharged crimes committed by the defendants themselves, is admissible 'to prove an essential element of the RICO crimes charged-the existence of a criminal enterprise in which the defendants participated.'"  United States v. Mejia, 545 F.3d 179, 206 (2nd Cir. 2008) (quoting United States v. Matera, 489 F.3d 115, 120 (2d Cir. 2007)).  Because the racketeering elements are part of the charged crime, it is "relevant for the government to offer evidence that [a defendant] was involved, not only in the conspiracy to cause the death of [the intended victim], but to offer proof that [the defendant], himself, was a member of the conspiracy and of the racketeering enterprise."  United States v. Rolett, 151 F.3d 787, 790 (8th Cir. 1998).  Indeed, the VCAR statute *requires* the Government to prove, as an essential element of the offense, that the racketeering enterprise had a separate and ongoing existence

above and beyond the commission of the underlying violent crime itself. See Smith, 413 F.3d at 1266-67. And as noted above, stipulations regarding a defendant's gang affiliation and/or the existence of a racketeering enterprise do not necessarily "preclude the government from introducing further evidence concerning the nature and extent of the enterprise and the nature and extent of the racketeering activity." See Rollett, 151 F.3d at 790-91.

It follows from the above analysis that Rule 404(b) does not apply to the Government's evidence of the AB's racketeering activity and continuing existence as a racketeering enterprise because such evidence is intrinsic to crimes charged under the VCAR statute in this case. In the alternative, such evidence is relevant and offered for a proper purpose under the Huddleston test, insofar as Rule 404(b) does apply. The admissibility of the evidence concerning the two incidents in question thus turns on the application of the balancing test stated in Rule 403.

Rule 403 instructs the Court to account for the availability of other means of proof and the avoidance of cumulative evidence. See Crowder, 141 F.3d at 1210 (citing the advisory committee notes to Fed. R. Evid. 403). Thus, regardless of whether the Government proffers its evidence under Rule 404(b) or as intrinsic to the enterprise and racketeering-activity elements of the VCAR offenses, the Court must evaluate whether the Government has other admissible evidence or means of proof at its disposal which it can use to prove the same elements of these offenses. At the same time, the Court also must inquire whether a particular item may be relevant to proving *multiple* elements of the charged crimes, not just those to which a defendant has offered to stipulate. See Crowder, 141 F.3d at 1208-09.

1.      **The Conspiracy to Murder Billy Anders**

The first item designated as "Rule 404(b) evidence" by the Government to which Defendant Dally objects is the anticipated testimony of "Cooperating Witness A"[2] that while he was an inmate in early 2005, Defendant Dally offered him a "fast track" entry into the AB if he would kill Billy Anders, a former sheriff's deputy, in retaliation for Anders shooting and killing an AB member named Earl Lee Flippen.  [Doc. 550, at 2.]   At the hearing on April 8, 2009, counsel for the Government identified several AB conspiracies aimed at murdering Billy Anders and explained that Defendant Dally's offer to Cooperating Witness A in early 2005 was associated with a conspiracy involving Anthony Hamilton and Daniel Forlines, who are defendants in another case filed in the District of New Mexico that is currently pending before the Honorable William P. Johnson.  See United States v. Hamilton, No. 08cr497 WJ, Doc. 10 (D.N.M. indictment filed March 18, 2008).

During his testimony at the hearing on April 8, 2009, Agent Griego attempted to connect the alleged Hamilton/Forlines conspiracy to murder Billy Anders with a portion of Defendant Dally's recorded conversation with "Cooperating Witness B" on April 16, 2007, during which Defendant Dally mentioned Mr. Hamilton.[3]   According to Agent Griego,

_____

[2]The Government has identified at least three cooperating witnesses who are referenced in this *Memorandum Opinion and Order*.  The Court refers to the first cooperating witness with whom Defendant Dally spoke in 2005 as "Cooperating Witness A."  The second cooperating witness with whom Defendant Dally spoke in 2007 is identified as "Cooperating Witness B."  A third cooperating witness, who was associated with Defendant Dally and other Defendants around the time of the Henry George murder, is identified as "Cooperating Witness C."

[3]The Court has addressed the admissibility of Defendant Dally's recorded conversation of April 16, 2007, in previous rulings.  [Doc. 601, 628.]

Defendant Dally was conveying the proposed murder contract for Billy Anders "per Anthony Hamilton" when he spoke with Cooperating Witness A in early 2005.  Agent Griego further explained that Defendant Dally's reference to Mr. Hamilton during the first conversation with Cooperating Witness A in early 2005 was followed by a recorded conversation between Cooperating Witness A and Mr. Hamilton, as well as an intercepted letter from Mr. Hamilton, in which Defendant Dally also is referenced.   [Tr. 4-8-09, at 161-63.]

After hearing Agent Griego's testimony, the Court asked the Government to identify which specific elements of the charged crimes it is seeking to prove through the evidence concerning the alleged murder contract for Billy Anders that Defendant Dally offered to Cooperating Witness A in early 2005.  Counsel for the Government responded that this evidence is relevant to prove the enterprise element of the VCAR offenses, *i.e.*, that "there's an ongoing criminal organization that acts as a continuing unit." [Tr. 4-8-09, at 229.]  In addition, counsel stated that the Anders murder contract shows another instance of racketeering activity as well as Defendant Dally's knowledge of the inner workings of the AB and his intent t o maintain or increase his status in that organization. [Tr. 4-8-09, at 232-33, 239-40.]

The probative value of Defendant Dally's statement regarding the Anders murder contract, however, is diminished by its remoteness in time from the violent crimes charged in the present case, which occurred approximately two and one-half years earlier.  Unlike the Rule 404(b) evidence at issue in Anifowoshe, 307 F.3d at 646-47, Defendant Dally's statement about the Anders murder contract does not contain similarities with the *modus*

*operandi* or motives for the crimes charged in the present case. The alleged Anders conspiracy involved a plan to murder a police officer in retaliation for murdering an AB member, while the present case involves alleged plans to murder fellow AB members or associates based on a concern that the intended victims were "snitching" to police. With respect to the Henry George murder, Defendant Dally is alleged to have carried out a "direct order" from Defendant Wasson, rather than persuading a third party to carry out the murder. And both the Henry George murder and the conspiracy to murder John Mudersbach do not appear to involve Defendant Dally in the same chain-of-command as the conspiracy to murder Billy Anders allegedly orchestrated by Anthony Hamilton.

The probative value of Defendant Dally's statement regarding the Anders murder contract is further diminished by the presence of Defendant Dally's proposed stipulations and the availability of other evidence to prove the same elements for which this statement is being offered. For example, the Court has denied Defendant Dally's motion to suppress his recorded statements to Cooperating Witness B on April 16, 2007, which contain numerous admissions concerning Defendant Dally's membership in the AB, knowledge of the AB's racketeering activities, and intent to maintain or increase his position in the AB. Cooperating Witness B also may testify about his own personal participation in crimes which amount to "racketeering activity" under the VCAR statute, as well as his own personal knowledge of other AB activities which are relevant to prove its existence as a RICO enterprise.

In addition, the Court's *Memorandum Opinion and Order* [Doc. 602] denying Defendant Dally's motion for a bill of particulars references other evidence of racketeering

activity during the year 2002 that was seized during the search of the Rio Rancho apartments, the arrest of Defendant Raymond and Josie Robinson, and the traffic stop involving Defendant Wasson.  As noted in the Court's prior ruling, the Government is required to prove that the enterprise (*i.e.*, the Aryan Brotherhood) was engaged in racketeering activity apart from the underlying violent crimes, but it is not required to prove that Defendant Dally personally participated in each instance of that enterprise's racketeering activity.  See Smith, 413 F.3d at 1277 (citing United States v. Concepcion, 983 F.2d 369, 381 (2d Cir. 1992)). It appears that Cooperating Witness C has personal knowledge of at least some racketeering activities dating from 2002, as well as Defendant Dally's admissions during this period, and will be available to testify about such matters at trial.

Insofar as it is offered to prove Defendant Dally's knowledge and intent, or to prove the RICO elements of the VCAR charges, the evidence linking Defendant Dally to the alleged conspiracy to murder Billy Anders is much more indirect and convoluted than the evidence summarized above.  While the Government may offer a single accusation from Cooperating Witness A about Defendant Dally's offer of AB membership in exchange for murdering Billy Anders, that single accusation may prompt an entire mini-trial about whether a conspiracy to murder Billy Anders ever existed, whether Anthony Hamilton directed that conspiracy, how Defendant Dally learned of the information concerning Billy Anders that he later conveyed to Cooperating Witness A, what relationship existed between Mr. Hamilton and Defendant Dally, and how the conspiracy associated with Mr. Hamilton compares and contrasts with other AB conspiracies to murder Billy Anders.  Addressing

those issues may give rise to inquiries about the credibility or competence of Mr. Hamilton, Mr. Forlines, or Cooperating Witness A.  Such questions concern a different cast of characters in a different time period and have little or no direct relation to the conspiracies and other violent crimes with which Defendant Dally is charged in the present case.

In these respects, the Government's proposal to introduce the testimony of Cooperating Witness A concerning Defendant Dally's involvement in an uncharged conspiracy to murder Billy Anders is analogous to the scenario wherein a defendant seeks to offer every single complaint in a police officer's internal-affairs file in order to impeach the officer or implicate the officer in other bad acts.  While there may be legitimate reasons for offering a limited amount of evidence regarding such uncharged acts regardless of whether they concern a criminal defendant or a law enforcement officer, it remains necessary for the Court to impose "safeguards including disallowing the use of instances that are remote in time, requiring the instances to be probative of [a disputed issue], and subject to the overriding protections of Rule 403."  United States v. Fuentez, 231 F.3d 700, 705 (10th Cir. 2000).

In the present case, the Court finds that the probative value of the Government's evidence concerning Defendant Dally's statement to Cooperating Witness A concerning the murder contract for Billy Anders is substantially outweighed by the danger of unfair prejudice and confusion of the issues.  Therefore, Defendant Dally's objection to that evidence is sustained subject to the following conditions.

First, as noted in prior rulings [Doc. 601, 602, 628], the Court will provide the

Government with ample opportunity to present other evidence that is more relevant to proving the elements of the charged offenses.  Second, the Court may reconsider the Government's proffer in the event that Defendant Dally withdraws his proposed stipulations, does not agree to a jury instruction consistent with his stipulations that requires the jury to accept the enterprise and membership elements of the VCAR offenses as proven, or introduces other, unanticipated evidence that "opens the door" to further inquiry about Mr. Hamilton, Cooperating Witness A, or the Anders murder conspiracy involving same.

### 2.   The Prison Incident of March 23, 2004

The second item of "Rule 404(b) evidence" proffered by the Government over Defendant Dally's objection concerns a prison incident on March 23, 2004, when a "squeegee" was found under Defendant Dally's bunk after he grabbed a corrections officer and ordered him to open Defendant Looney's cell in preparation for a possible attack on another inmate named Shawn Ural, who is allegedly a rival gang member.  According to the Government's proffer at the hearing on April 8, 2009, the Government's proof concerning this incident consists of witnesses who "could testify that they saw Travis Dally lay hands on a corrections officer, that Travis Dally ordered that officer to have one or two more doors opened," and that these actions prompted "a lockdown from the other corrections officers," followed by a "shakedown" or search of the cells which revealed a "squeegee" in Defendant Dally's cell that could have been used as a weapon.  [Tr. 4-8-09, at 243.]  Such testimony would be based on the witnesses' personal observations of the incident, and the Government would offer this testimony for the purpose of proving the enterprise and racketeering-activity

elements of the VCAR offenses charged in the *Superseding Indictment.* [Doc. 36.]

At the hearing, Defendant Dally's counsel acknowledged that "there's no dispute ... that the incident did occur" and that "Mr. Dally had grabbed a corrections officer and told him to open up the cell of Jeremiah Looney." [Tr. 4-8-09, at 246.] But Defendant Dally questions whether and how the Government can prove through admissible evidence that this incident relates to the AB or any kind of organized conflict with a rival gang.

The Court agrees with Defendant Dally that the Government's proffer is unclear as to how it will prove that his actions with respect to the corrections officer were directed at Mr. Ural for some gang-related purpose attributable to the AB. While it is possible that a corrections officer could testify that Defendant Dally ordered him to "have one or two more doors opened," it is speculation to guess at what Defendant Dally was planning to do if the corrections officer had obeyed his directions.

Further, counsel for the Government acknowledged that several layers of inferences may need to be drawn in order to prove that whatever Defendant Dally planned to do with Defendant Looney after the doors were opened was related to a conflict between the AB and a rival gang. Counsel stated that the Government would attempt to prove that the incident was gang-related through the testimony of "witnesses from the prison who were familiar with who the inmates were and what organization they belonged to, the AB versus the SNM, and their knowledge of the ongoing feud between the two." [Tr. 4-8-09, at 242.] But the witnesses' familiarity or knowledge of such affairs would be based on "many conversations through members of each group which would be basically a conglomeration of opinions

which would form the witness' opinion about why they believe there's animosity between the two" gangs.  [Tr. 4-8-09, at 242.]

Counsel further acknowledged that such a "conglomeration of opinions" might involve testimony from the Government's proposed gang expert concerning how the conflict allegedly began when Defendant Dally shot and killed an SNM member in 1997.  [Tr. 4-8-09, at 243-45.]  Bringing up the 1997 killing in this context invites an unavoidable mini-trial on the circumstances of that killing and the ensuing history of conflicts between the AB and the SNM which have no direct relationship to the crimes charged in the present case.[4]

Insofar as the Government's proffer does not overcome these complications with respect to showing how the incident was gang-related, such a proffer has little or no probative value with respect to proving the enterprise and racketeering-activity elements of the VCAR offenses charged in the *Superseding Indictment*, because these elements necessarily require proof of a relationship to the AB, rather than just criminal behavior on the part of Defendant Dally.  And regardless of whether such a gang relationship is established, there is a danger of unfair prejudice associated with presenting evidence that Defendant Dally was in prison in 2004 and committed some violent or threatening act at that time which, according to the Government's proffer, is otherwise unrelated to the violent

---

[4]The Court acknowledges that some evidence of the 1997 killing may be introduced at trial insofar as Defendant Dally voluntarily mentioned that killing during his recorded conversation with Cooperating Witness B on April 16, 2007.  But the admission of that recording does not necessarily support the inference that the 1997 killing is related to the 2004 prison incident involving Mr. Ural, nor does it give the Government license to introduce the entire history of relations between the two gangs from 1997 through 2004.

crimes charged in the *Superseding Indictment*.

For these reasons, the Court determines that the Government's evidence concerning the prison incident of March 23, 2004, is inadmissible under Rule 403 insofar as it is offered to prove the enterprise and racketeering-activity elements of the charged offenses. The Court acknowledges, however, that this ruling rests to a significant degree on the limited purposes which the Government identified as grounds for offering such evidence, as well as the Government's inability to provide more specific details in support of its proffer. When the Court asked to "hear the proffers that would support introduction of March 23, 2004, incident," the Government's counsel responded by phrasing his proffer in a very tentative manner, noting what counsel thought "they would be able to testify . . . if we can find those witnesses." [Tr. 4-8-09, at 243.] At the hearing on April 8, 2009, specific details were lacking not only with respect to showing how the incident was gang-related, but also with respect to showing how the evidence might be admissible for other purposes relating more directly to the alleged conspiracy to murder John Mudersbach in 2002, such as evincing Defendant Dally's continuing association with Defendant Looney or sharing a common *modus operandi* with respect to the attack on Mr. Mudersbach.

As noted above, the Court will provide the Government with ample opportunity to present other evidence that is more relevant to proving each element of the charged offenses, and the Court may reconsider the Government's proffer in the event that Defendant Dally withdraws his proposed stipulations, does not agree to a jury instruction consistent with his stipulations that requires the jury to accept the enterprise and membership elements of the

VCAR offenses as proven, or introduces other, unanticipated evidence that "opens the door" to further inquiry about the prison incident on March 23, 2004, or Defendant Dally's association with Defendant Looney.

IV.   **CONCLUSION**

For the foregoing reasons, the Court sustains Defendant Dally's objections to the Government's proffer of evidence concerning the prison incident on March 23, 2004, and Defendant Dally's statement to Cooperating Witness A in early 2005 concerning a conspiracy to murder Billy Anders, subject to the conditions set forth herein.

**IT IS THEREFORE ORDERED** that Defendant Dally's *Objection* [Doc. 565] to the Government's *Notice of Other Crimes or Bad Acts Pursuant to Rule 404(b)* [Doc. 550] filed on February 27, 2009, is sustained subject to the conditions set forth above.

**IT IS FURTHER ORDERED** that the parties are directed to file a notice setting forth their respective positions regarding the Court's proposed jury instruction stated herein, or setting forth their own proposed instruction incorporating Defendant Dally's proposed stipulations [Doc. 594] with citation to authority, by no later than May 12, 2009.

**SO ORDERED** in Albuquerque, New Mexico, this 6th day of May, 2009.

**M. CHRISTINA ARMIJO**
United States District Judge